IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Johnny Jones, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | No. 17-cv-8218 |
| -vs- | ) | |
| | ) | *(Judge Rowland)* |
| Wexford Health Sources, Inc., a | ) | |
| foreign corporation, and Dr. | ) | |
| Marshall James, | ) | |
| | ) | |
| *Defendants.* | ) | |

## MOTION TO EXCLUDE OPINIONS OF DR. PRODOMOS ON DEFENSE MOTION FOR SUMMARY JUDGMENT

Plaintiff, by counsel, moves the Court to exclude from summary judgment proceedings the opinion testimony of defendants' retained expert, Dr. Chadwick Prodromos, as set out in his expert report, filed as Exhibit F to defendants' Local Rule 56.1 Statement, ECF No. 91-6.[1]

### I.   Legal Standard for Expert Opinion at Summary Judgment

1.      Before expert testimony may be admitted, "[t]he court must decide that the witness is 'qualified as an expert by knowledge, skill, experience, training, or education'; the testimony will 'help the trier of fact to understand the evidence or to determine a fact in issue'; 'the testimony is based on sufficient facts or data' and 'reliable principles and methods'; and

---

[1] Plaintiff did not depose Dr. Prodromos. *See* Gregory P. Joseph, Expert Approaches, 28 LITIGATION No. 4, 20 (Summer 2002).

the expert has 'reliably applied the principles and methods to the facts of the case.'" *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019) (quoting FED. R. EVID. 702). This standard is fully applicable at summary judgment. *Timm v. Goodyear Dunlop Tires N. Am., Ltd.*, 932 F.3d 986, 993-94 (7th Cir. 2019).

2.      On defendants' motion for summary judgment, the Court must view the record in the light most favorable to the plaintiff. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).

3.      The same standard applies to expert opinions. That is, defendants' expert opinion may not be used at summary judgment if the opinion "does not view the facts in the light most favorable to [plaintiff] or resolve disputed facts in his favor." *Bowens v. City of Indianapolis*, No. 1:13-CV-00072-DML-SE, 2014 WL 4680662, at *4 n.1 (S.D. Ind. Sept. 19, 2014). This approach is required by Federal Rule of Evidence 702(d). *Lightfoot v. Georgia-Pac. Wood Prod., LLC*, No. 7:16-CV-244-FL, 2018 WL 6729636, at *2 (E.D.N.C. Dec. 21, 2018) ("Consideration of the underlying facts in the light most favorable to plaintiff is a necessary component of the court's analysis, at this juncture, for determining whether plaintiff's expert opinions are based upon 'sufficient facts or data' and applied 'to the facts of the case.'") (quoting FED. R. EVID. 702(d).)

4.    The opinion of an expert that is not based on the facts viewed in the light most favorable to the party opposing the motion for summary judgment does "not fit the facts of the case," *Owens v. Auxilium Pharm., Inc.*, 895 F.3d 971, 973 (7th Cir. 2018), and must be excluded on summary judgment.

## II.    Dr. Prodomos's Opinions Are Not Based on the Record Viewed in the Light Most Favorable to Plaintiff

5.    Dr. Prodromos identifies opinions about two questions in his report: whether Dr. James met the standard of care "for a primary care doctor evaluating an acute knee injury" (Prodromos Report at 3, ECF No. 91-6 at 4) and whether the tendon graft surgery in February of 2016 (performed by Dr. Behl, who is not a party in this case) "was successful and restored function of [plaintiff's] patellar tendon." (Prodromos Report at 4, ECF No. 91-6 at 5.)

6.    Plaintiff shows below that Dr. Prodromos does not base his opinions on the summary judgment standard of viewing the record in the light most favorable to plaintiff. In many places, Dr. Prodromos misreads the record to rely on "alternative facts."

### A. Description of Plaintiff's Injury

7.    Dr. Prodromos begins his report by mischaracterizing plaintiff's injury, stating the following in the background section of his report:

> On November 14, 2015 Mr. Jones injured his left knee playing basketball. The same day he was examined by a nurse who noted that the patient characterized his pain as only a level of four on a scale of 1 to 10. The patient was also noted to have no tenderness swelling or bruising and was ambulatory under his own power.

(Prodromos Report at 2, ECF No. 91-6 at 3.) This description is inconsistent with the "offender injury report" prepared by K. Torres, RN, Plaintiff's Exhibit 2[2], and contradicts plaintiff's deposition testimony:

8.     **Plaintiff's knee pain was not 4 out of 10**—The offender incident report recites that plaintiff was experiencing "dull" head pain of "4/10." (Plaintiff's Exhibit 2 at 2.) Nurse Torres did not provide a rating for plaintiff's knee pain, noting only that plaintiff was also experiencing such pain. (*Id.*) Plaintiff described the knee pain in his deposition as "Like off the scale. Like a ten." (Jones Dep. 47:20-23, ECF No. 91-1 at 14.) Dr. Prodromos appears to confuse plaintiff's report of head pain with his knee pain.

9.     **Plaintiff was not ambulatory under his own power**—The "offender injury report" recites that plaintiff's left knee had "gone out" while he was playing basketball, causing plaintiff to hit his head on the floor. (Plaintiff's Exhibit 2 at 2.) This is consistent with plaintiff's deposition

---

[2] Plaintiff files as a separate document the exhibits to which he refers in this motion, in his Response to Defendants' Rule 56.1 Statement, and in his Statement of Additional Facts.

testimony that he fell to the ground after "something snap[ped] … [t]he prison guard came and helped me off the ground. A couple of [prison guards] loaded me up" and took plaintiff directly to the health care unit from the basketball court. (Jones Dep. 31:4-17, ECF No. 91-1 at 10.) Dr. Prodromos minimizes the injury by omitting the description of "snap" and "gone out" and stating incorrectly that plaintiff was "ambulatory under his own power" when the nurse examined him. (Prodromos Report at 2, ECF No. 91-6 at 3.) To the contrary, the nurse's notes state that the nurse provided plaintiff with pain medication and crutches and ordered that plaintiff rest and keep his knee elevated. (Plaintiff's Exhibit 2 at 2.)

### B. Signs and Symptoms Plaintiff Presented to Defendant Dr. James on November 16, 2015

10.     Plaintiff was first seen by Dr. James on November 16, 2015. Dr. Prodromos asserts incorrectly that plaintiff presented to Dr. James on November 16, 2015 "with little swelling, little pain, no bruising, and an essentially normal X-ray" (Prodromos Report at 3, ECF No. 91-6 at 4) and that plaintiff had "had 5/5 strength." (Prodromos Report at 4, ECF No. 91-6 at 5.)

11.     **Plaintiff had swelling and pain on November 16, 2015**—Dr. James wrote in his note of November 16, 2015 that plaintiff had "increased knee swelling and pain." (Medical Record, November 16, 2015, Plaintiff's

Exhibit 3; Dr. James Dep. 26:15-27:10, ECF No. 91-2 at 8.) Plaintiff reported knee pain of 8 out of 10 during that examination. (Dr. James Dep. 16:1-3, ECF No. 91-2 at 5.)

12.     **Dr. James did not review the X-ray on November 16, 2015—** Dr. James ordered X-rays on November 16, 2015 to "rule out patella rupture." (Dr. James Dep. 26:23, 28:4-6, ECF No. 91-2 at 8.) The X-ray results were not available until November 18, 2015, when the radiologist completed his report. (Plaintiff's Exhibit 3). Dr. James subsequently reviewed the report but could not state when he did so. (Dr. James Dep. 35:13-15, ECF No. 91-2 at 10.)

13.     **Dr. James did not make any determination about "strength" on November 16, 2015—**There is no measurement of strength on the medical records for November 16, 2015. (Medical Record, November 16, 2015, Plaintiff's Exhibit 3.) Nor did Dr. James provide any deposition testimony about "strength." (Dr. James Dep. Word Index 4, ECF No. 91-2 at 25.)

14.     The measurement of strength on which Dr. Prodromos appears to rely was recorded by Dr. Behl on May 9, 2016, after he performed the first knee surgery on plaintiff. (Dr. Behl Dep. 44:22-46:1, ECF No. 91-4 at 13.)

This measurement, of course, has nothing to do with Dr. James's examination of plaintiff on November 16, 2015.

### C. Dr. James's Plan on November 16, 2015

15.    Dr. Prodromos states that "[b]ased on the patient's presentation and the X-ray results" Dr. James told plaintiff during the examination on November 16, 2015 to return on an "as needed basis." (Prodromos Report at 2, 3 ECF No. 91-6 at 3, 4.) This is contrary to the record.

16.    Dr. Prodromos also asserts that Dr. James "instructed Mr. Jones on home exercises" during his examination on November 16, 2015. (Prodromos Report at 2, ECF No. 91-6 at 3.) This is also incorrect.

17.    **Dr. James did not tell plaintiff to return on an as needed basis—**The notes Dr. James made on November 16, 2015 do not contain any instructions about follow-up treatment. (Medical Record, November 16, 2015, Plaintiff's Exhibit 3.)

18.    On November 30, 2015, Dr. James signed and dated the report the nurse had prepared on November 14, 2015 about plaintiff's injury. (Offender Injury Report, November 14, 2015, at 2, Plaintiff's Exhibit 2.) Dr. James checked the box on that incident report for "PRN" (a standard medical abbreviation for "as needed"). There is no evidence that this

instruction was communicated to plaintiff at any time, let alone communicated to him on November 16, 2015.

19.     Dr. Prodromos has created out of whole cloth his false factual claim that "Dr. James appropriately told the patient to return on an as needed basis — i.e., if he were not doing well." (Prodromos Report at 2, ECF No. 91-6 at 3.)

20.     **Dr. James did not instruct plaintiff on home exercises—** Nothing in Dr. James's record of November 16, 2015 refers to exercises. (Medical Record, November 16, 2015, Plaintiff's Exhibit 3.) Dr. James explained at his deposition that, rather than exercises, he prescribed "complete rest and no weightbearing on the affected knee." (Dr. James Dep. 17:12-13, ECF No. 91-2 at 6.)

21.     Plaintiff first received instructions on exercise after knee surgery in February of 2016. (Jones Dep. 52:17-53:7, ECF No. 91-1 at 15.)

22.     Dr. Prodromos relies on his invented claim of "home exercises" to support his opinion that Dr. James met the standard of care (Prodromos Report 3, ECF No. 91-6 at 4) and that it was reasonable to postpone an MRI while waiting to see progress after "a course of physical therapy or prescribed exercise." (*Id.* at 4, ECF No. 91-6 at 5.)

### D. The X-Ray Report Dated November 18, 2015

23.     Dr. Prodromos continues to play fast and loose with the facts when he asserts that the X-ray taken on November 16, 2015 did not indicate a ruptured patellar. (Prodromos Report at 2, ECF No. 91-6 at 3.)

24.     Dr. Prodromos, however, did not review the X-ray: it is not included in the list of items he reviewed to form his opinions. (Prodromos Report at 1, ECF No. 91-6 at 2.) Dr. Prodromos likely reviewed the radiologist's report dated November 18, 2015, which describes the patella as "slightly high riding." (X-Ray Report of November 18, 2015, Plaintiff's Exhibit 4.)

25.     A "high riding patella," as explained by plaintiff's expert, is "a patella that is no longer in its normal position in the knee." (Dr. Cannestra Dep. 54:5-7, ECF No. 91-7 at 15.) This is consistent with a ruptured patella. (Dr. Cannestra Dep. 53:10-11, ECF No. 91-7 at 15.)

### E. Dr. James's Examination on December 8, 2015

26.     Dr. James examined plaintiff on December 8, 2015 and requested an MRI or a referral to an orthopedist (Dr. James Dep. 38:7-13, ECF No. 91-2 at 11) to "rule out tendon rupture" because the "X-ray [was] consistent with patella riding high." (Dr. James Dep. 37:7-9, ECF No. 91-2 at 11.)

27.     Dr. Prodromos claims that the injury "was presenting in a significantly different fashion" when Dr. James examined plaintiff on December 8, 2015. (Prodromos Report at 3, ECF No. 91-6 at 4.) This claim is again not supported by the record.

28.     Plaintiff exhibited "increased knee swelling and pain" when Dr. James examined him on November 16, 2015. (Dr. James Dep. 26:12, ECF No. 91-2 at 8). Dr. James offered a similar description in his record for December 8, 2015, Plaintiff's Exhibit, describing plaintiff as "[i]nmate with persistent left knee pain and swelling." (Dr. James Dep. 37:4-5, ECF No. 91-2 at 11).

29.     In addition, contrary to Dr. Prodromos's false narrative that plaintiff's condition worsened, Dr. James explained at his deposition that the swelling decreased between November 16 and December 8. (Dr. James Dep. 40:18-19, ECF No. 91-2 at 11.)

30.     Dr. Prodromos asserts that plaintiff's condition on December 8, 2015 was "in contradistinction to what [Dr. James] had observed when the patient initially presented to him." (Prodromos Report at 2, ECF No. 91-6 at 3.) This is somewhat hyperbolic: the left knee pain was the same and the swelling had decreased. While Dr. James observed a "notable displacement of patella" in his notes for December 8, 2015, (Dr. James Dep. 37:5-6, ECF

No. 91-2 at 11), this is consistent with the radiologist's report of November 18, 2015 of "slightly riding patella, high riding patella." (Dr. James Dep. 40:9-10, ECF No. 91-2 at 11.)

### F. Ordering an MRI or "Ortho Intervention"

31.     Dr. Prodromos asserts that Dr. James "immediately ordered an MRI" when it became necessary. (Prodomos Report at 2, ECF No. 91-6 at 3.) This is inaccurate.

32.     After his initial examination of plaintiff on November 16, 2015 Dr. James considered presenting plaintiff's case for a "conference … with a senior doctor that pretty much determines where we [are] going to go forth with the management of the particular patient." (Dr. James Dep. 16:17-17:3, ECF No. 91-2 at 5-6.)

33.     Instead, Dr. James prescribed what he described as "conservative treatment" (and which a jury could concluded amounted to no treatment at all) or pain medication, complete rest, and no weightbearing. (Dr. James Dep. 16:4-17:13, ECF No. 91-2 at 5-6.)

34.     Dr. James chose to continue this "treatment" after he reviewed the X-ray report. (Dr. James Dep. 35:24-36:12, ECF No. 91-2 at 10.)

35.     Dr. James did not present plaintiff's case to the collegial meeting until December 15, 2015. (Dr. James Dep. 41:2-4, ECF No. 91-2 at 12.)

### G. No Basis for "Refused Medical Care"

36. Dr. Prodromos returns to his role as a partisan in the third paragraph of the "background" section of his report, stating:

> Notably, on both December 26, 2015 and December 29, 2015, Mr. Jones refused medical care with the Sheridan Correctional Center medical staff."

(Prodromos Report at 2, ECF No. 91-6 at 3.)

37. Dr. Prodromos does not explain why this is "notable." Nor does Dr. Prodomos explain why he refuses to credit plaintiff's deposition testimony that the only treatment he ever refused while in the Department of Corrections was two different pain medications to which he had bad reactions. (Jones Dep. 61:9-62:12, ECF No. 91-1 at 17-18.)

38. Finally, Dr. Prodromos does not attempt to reconcile any refusals of medical care by plaintiff with the unambiguous grievance plaintiff submitted on December 29, 2015 complaining about the delay in scheduling the MRI for what plaintiff described as a ruptured patella. (Offender's Grievance, December 29, 2015, Plaintiff's Exhibit 11, Grievance.)

### H. Elevating the Role of the Radiologist

39. Dr. Prodromos again refuses to read the record in the light most favorable to plaintiff in paragraph 4 of the background section of his report, stating, "The radiologist [who performed the MRI] did not urgently

-12-

refer Mr. Jones for a surgical consult." (Prodromos Report at 2, ECF No. 91-6 at 3.)

40.     Dr. Prodromos does not explain the basis for this assertion. There is no foundation for any inference from the fact that the radiologist who read the MRI did not refer Mr. Jones for a surgical consult.

41.     Plaintiff's expert makes plain that "no radiologist would, in fact, do this as it is not the standard of care for the radiologist to make such a decision. Rather it is the responsibility of the ordering and treating physician to make such an urgent surgical consultation request, based on his clinical decisionmaking as determined by the patient's history and physical exam findings, both of which a radiologist has no knowledge." (Dr. Cannestra Verified Rebuttal Expert Report at 4, Plaintiff's Exhibit 10.)

### III.     Opinions about Injury from Delay in Treatment

42.     Dr. Prodromos offers the opinion that the delay in treatment did not cause any harm to plaintiff. (Prodromos Report at 4, ECF No. 91-6 at 5.) This opinion, like the opinion about the standard of care, is not based on the record.

43.     In addition, the opinion is not relevant to defendants' motion for summary judgment because it concerns only the extent of plaintiff's damages.

-13-

44.     Dr. Prodromos formed his opinion by relying on the erroneous contention that "[n]either of Mr. Jones' surgeons has ever stated that any delay in surgery affected the outcome of the surgery." (Prodromos Report at 4, ECF No. 91-6 at 5.) This is a misreading of the reports of the surgeons.

45.     Dr. Behl told plaintiff on February 8, 2016, that the delay between his injury and surgery would impact the outcome of the surgery. (Dr. Behl Note, February 8, 2016, Plaintiff's Exhibit 7.)

46.     The surgery, which Dr. Behl performed on February 16, 2016 (Dr. Behl Dep. 19:20-21, ECF No. 91-4 at 6), was complicated by the delay in treatment, which had allowed scar tissue to develop. (Dr. Behl Dep. 20:1-22:19, ECF No. ECF No. 91-4 at 6-7.)

47.     Dr. Verma observed that plaintiff had a chronic neglected patellar tendon disruption, meaning that the original tendon rupture had not been treated promptly.  (Dr. Verma Note, October 11, 2017, at 1, Plaintiff's Exhibit 8, Dr. Verma Dep. 14:1217, ECF No. 91-5 at 5.)

48.     The Court should therefore exclude Dr. Prodromos' opinions about delay in treatment.

## IV.    Conclusion

For all these reasons, the Court should exclude from summary judgment proceedings the opinions of Dr. Prodromos.

Respectfully submitted,

/s/  Joel A. Flaxman
Joel A. Flaxman
ARDC No. 6292818
Kenneth N. Flaxman
200 S Michigan Ave Ste 201
Chicago, IL 60604-2430
(312) 427-3200
jaf@kenlaw.com
*Attorneys for Plaintiff*